**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| ORTIZ & ASSOCIATES CONSULTING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-1265-MN |
| | ) | |
| ROKU, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT ROKU, INC.'S
MOTION TO DISMISS FOR LACK OF PATENT-ELIGIBLE SUBJECT MATTER**

ASHBY & GEDDES
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Of Counsel:*

Kent E. Baldauf, Jr.
Bryan P. Clark
THE WEBB LAW FIRM
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA  15222
(412) 471-8815

*Attorneys for Defendant*

Dated:  December 26, 2018

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ................................................................................. ii

I.    NATURE AND STATE OF THE PROCEEDING ........................................ 1

II.   SUMMARY OF ARGUMENT .................................................................... 1

III.  STATEMENT OF FACTS ........................................................................... 2

      A.  The '914 Patent ................................................................................ 2

      B.  The '299 Patent ................................................................................ 3

      C.  The '285 Patent ................................................................................ 4

      D.  The Specification .............................................................................. 5

IV.   LEGAL STANDARD ................................................................................. 5

V.    ARGUMENT ............................................................................................. 6

      A.  Patent Eligibility Is a Threshold Issue Appropriate for the Pleading Stage ................... 7

      B.  The Asserted Patents are Invalid as Lacking Eligible Subject Matter Under 35 U.S.C. § 101 ................................................................................ 8

          1.  The Claims of the Asserted Patents are Directed to the Abstract Idea of Transmitting Data Over a Network to a Display Device ....................................... 8

          2.  The Claims of the Asserted Patents Lack an "Inventive Concept" Capable of Transforming the Abstract Idea into Patent-Eligible Subject Matter ................. 13

VI.   CONCLUSION ........................................................................................ 17

# TABLE OF AUTHORITIES

## *CASES*

*3G Licensing, S.A. v. Blackberry Ltd.,*
    302 F. Supp. 3d 640 (D. Del. 2018) ......................................................................6

*Affinity Labs of Texas, LLC v. Amazon.com Inc.,*
    838 F.3d 1266 (Fed. Cir. 2016) .............................................................. 10, 11, 14

*Affinity Labs of Texas, LLC v. Amazon.com, Inc.,*
    137 S. Ct. 1596 (2017) .........................................................................................14

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*
    137 S. Ct. 1596 (2017) .........................................................................................10

*Affinity Labs of Texas, LLC v. DIRECTV, LLC,*
    838 F.3d 1253 (Fed. Cir. 2016) .......................................................................2, 10

*Alice Corp. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014) ................................................................................*passim*

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...............................................................................................5

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018) .........................................................................7, 8

*Bilski v. Kappos,*
    561 U.S. 593 (2010) ............................................................................................5, 7

*buySAFE, Inc. v. Google, Inc.,*
    765 F.3d 1350 (Fed. Cir. 2014) .............................................................................6

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
    316 F. Supp. 3d 1138 (N.D. Cal. 2018) ...............................................................13

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*
    776 F.3d 1343 (Fed. Cir. 2014) .............................................................................6

*Cuvillier v. Taylor,*
    503 F.3d 397 (5th Cir. 2007) .................................................................................5

*Dealertrack, Inc. v. Huber,*
    674 F.3d 1315 (Fed. Cir. 2012) .............................................................................5

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)............................................................................................14

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)........................................................................................8, 12

*Epic IP LLC v. Backblaze, INC.*, No. 1:18-141-WCB,
    2018 WL 6201582 (D. Del. Nov. 26, 2018)............................................................................7

*Front Row Techs. LLC v. MLB Advanced Media, L.P.*,
    138 S. Ct. 1597 (2018) ........................................................................................................15

*Front Row Techs. LLC v. MLB Advanced Media, L.P.*,
    697 Fed. Appx. 701 (Fed. Cir. 2017) ..................................................................................15

*Front Row Techs., LLC v. NBA Media Ventures, LLC*,
    204 F. Supp. 3d 1190 (D.N.M. 2016) ..................................................................................15

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008) ...............................................................................................5

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) ........................................................................... 10, 11, 12, 17

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*,
    76 F. Supp. 3d 513 (D. Del. 2014) ................................................................................13, 14

*Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*,
    803 F.3d 667 (Fed. Cir. 2015) ......................................................................................13, 14

*Location Based Servs., LLC v. Niantic, Inc.*,
    295 F. Supp. 3d 1031 (N.D. Cal. 2017)...............................................................................16

*Location Based Servs., LLC v. Niantic, Inc.*,
    742 Fed. Appx. 506 (Fed. Cir. 2018) ..................................................................................16

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ..................................................................................................14, 17

*Mobile Telecommunications Techs., LLC v. Blackberry Corp.*, No. 3:12-cv-1652-M,
    2016 WL 2757371 (N.D. Tex. May 12, 2016) ......................................................................13

*Mobile Telecommunications Techs., LLC v. United Parcel Serv.*, Inc.,
    173 F. Supp. 3d 1324 (N.D. Ga. 2016) ................................................................................15

*Mobile Telecommunications Techs., LLC v. United Parcel Serv., Inc.*,
    708 Fed. Appx. 684 (Fed. Cir. 2018) ................................................................15

*Money Suite Co. v. 21st Century Ins. & Fin. Servs., Inc.*, No. 13-984-GMS,
    2015 WL 436160 (D. Del. Jan. 27, 2015) .........................................................15

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015).............................................................................6

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017)...........................................................................14

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) .......................................................................7, 15

*Uniloc USA, Inc. v. Amazon.com, Inc.*,
    243 F. Supp. 3d 797 (E.D. Tex. 2017) ...............................................................15

*Uniloc USA, Inc. v. Amazon.com, Inc.*,
    733 Fed. Appx. 1026 (Fed. Cir. 2018) ...............................................................15

*VideoShare, LLC v. Google, Inc.*,
    695 Fed. Appx. 577 (Fed. Cir. 2017) ..................................................................11

*VideoShare, LLC v. Google, Inc.*, No. 13-cv-990 (GMS),
    2016 WL 4137524 (D. Del. Aug. 2, 2016)...................................................11, 13

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
    887 F.3d 1376 (Fed. Cir. 2018)............................................................................6

## *STATUTES*

35 U.S.C. § 101..............................................................................................*passim*

## *RULES*

Fed. R. Civ. P. 12(b)(6) ................................................................................ 1, 5, 6, 7

## I.      NATURE AND STATE OF THE PROCEEDING

On August 17, 2018, Plaintiff Ortiz & Associates Consulting, LLC ("Ortiz") filed a Complaint (D.I. 1) against Defendant Roku, Inc. ("Roku") alleging that Roku infringes claim 16 of U.S. Patent No. 8,971,914 ("the '914 Patent"), claim 1 of U.S. Patent No. 9,147,299 ("the '299 Patent"), and claim 1 of U.S. Patent No. 9,549,285 ("the '285 Patent"). The '914 Patent, the '299 Patent, and the '285 Patent collectively are referred to herein as "the Asserted Patents".[1]  Roku hereby moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) and 35 U.S.C. § 101.

## II.     SUMMARY OF ARGUMENT

The asserted claims of the Asserted Patents are directed to the abstract idea of transmitting data over a network to a display device, such as a computer, projector, or television. '914 Patent, 1:26-30.[2] This concept of transmitting data over a network to a display was in wide use well before the earliest priority date of the subject patents, and was employed by conventional technology such as networked printers, televisions, and DVD players.  The asserted claims do not transform this abstract idea into a patent-eligible invention, but instead simply recite methods in which this conventional activity is carried out using known hardware (e.g., a "WD" or "wireless device") and communication techniques (e.g., a "communication network").  *See, e.g.*, '914 Patent, claim 16. The asserted claims do not address or solve any technological problem, but instead simply take the abstract idea itself and apply it in an environment in which known wireless devices and wireless networks are used in place of conventional wired devices and wired networks.  Under the Supreme Court's framework established in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), and as

---

[1] Copies of the '914, '299, and '285 patents were provided as, respectively, Exhibits A-C to the Complaint.

[2] Roku generally cites only to the '914 Patent, for convenience, but notes that the Asserted Patents share a common specification and that similar disclosures can be found in each patent.

applied in numerous decisions since, the asserted claims are invalid for lack of patent-eligible subject matter under § 101.

## III.    STATEMENT OF FACTS

The Complaint alleges that Roku has both directly infringed and induced infringement of the Asserted Patents (Counts I through III), by providing devices that allegedly meet the limitations of claim 16 of the '914 Patent, claim 1 of the '299 Patent, and claim 1 of the '285 Patent.  *See* Compl. ¶¶ 21-44.

### A.    The '914 Patent

The Complaint asserts claim 16 of the '914 Patent against Roku.  Compl. ¶ 21.  Claim 16 recites:

> 16. A method of brokering video data between handheld wireless devices and a video monitors including a display screen and access to a data network, comprising:
>
> using a wireless network supporting a handheld wireless device (WD) including at least one of a smart phone or personal digital assistant to locate said video monitor including a display screen and access to a data network;
>
> selecting video data for rendering on said video monitor using said WD after authorization code provided by the WD is verified by said video monitor; and
>
> providing said video data to said video monitor selected by said WD for rendering by said video monitor selected by said WD.

'914 Patent, claim 16.

"Stripped of excess verbiage," the claimed concept is straightforward.  *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256-57 (Fed. Cir. 2016).  Claim 16 is directed to the generic concept of transmitting data over a network to a display device, reciting only conventional and well-known components for accomplishing that task.

For example, claim 16 recites a method of "brokering video data," where "brokering" is broadly described as "the negotiation, management, coordination, and/or facilitation of data

movement and use between and throughout DRDs [data rendering devices], WDS [wireless devices] and networks." '914 Patent, 6:50-53. This method is carried out using a "handheld wireless device (WD)" that is "supported by a wireless network" to locate a "video monitor" that includes a display screen and access to a data network. The method also includes using the WD to select video content to render, or display, on the video monitor after an "authorization code" is verified by the monitor, and then providing the video data to the video monitor where it is rendered.

The '914 Patent does not purport to have invented the generic components recited in claim 1 of the '914 Patent. For example, the '914 Patent describes "available" wireless computing devices, including mobile or cellular telephones, smart phones, and laptops that can communicate wirelessly through data networks. '914 Patent, 2:4-19.

## B.     The '299 Patent

The Complaint asserts claim 1 of the '299 Patent against Roku. Compl. ¶ 29. Claim 1 recites:

> 1. A method of brokering video data between handheld wireless devices and publicly and privately available data rendering devices in the form of at least one of a video monitor and multimedia projector for rendering of the video data at a selected rendering device, comprising:
>
> receiving a request in a wireless data communication network from a wireless device (WD) to locate at least one data rendering device (DRD) in the form of at least one of a video monitor and multimedia projector for rendering video data selected at said WD, said request including WD location information;
>
> said wireless data communication network identifying a physical location, operational readiness and rendering capabilities of at least one DRD for said WD based on the WD location information;
>
> said wireless data communication network providing said WD with location information of at least one accessible DRD for selection by said WD; and

> receiving from said WD via said wireless data communication network a selection of a DRD by entry of authorization code at a user interface on at least one of said WD and said DRD once the DRD is physically located, and video data selected from at least one of said WD or a server accessible by said WD for rendering at said DRD, wherein verification of the authorization code entered on the user interface causes said DRD to retrieve and render the video data.

'299 Patent, claim 1.

Claim 1 of the '299 Patent is a variation of the abstract idea of claim 16 of the '914 Patent, discussed above, and employs similar well-known concepts and conventional hardware, including "brokering data" between a DRD (data rendering device) and a WD (wireless device) using a "wireless data communication network." Like with the '914 Patent, the '299 Patent does not purport to have invented the generic components recited in claim 1. For example, the '299 Patent describes "available" wireless computing devices, including mobile or cellular telephones, smart phones, and laptops that can communicate wirelessly through data networks. '299 Patent, 2:6-20.

### C.    The '285 Patent

The Complaint asserts claim 1 of the '285 Patent against Roku. Compl. ¶ 38. Claim 1 recites:

> 1. A system for rendering data provided via a data communications network at the request of a wireless device, comprising:
>
> a server in communication with at least one data rendering device (DRD), said at least one DRD including a user interface for receiving passcodes, the DRD registered with said server to access and receive data over a data communications network at the request of a wireless device (WD) for rendering of the data at the at least one DRD in response to a passcode associated with said WD being entered at the user interface;
>
> memory in said server accessible by said DRD, said memory for securely storing data received by or on behalf of said WD and said passcode associated with said WD; and

> wherein said server is configured to receive said data and said passcode associated with said WD from said memory and to render said data after at least one passcode is entered on said user interface that matches said passcode stored in said memory associated with said WD and provided to said DRD.

'285 Patent, claim 1.

Claim 1 of the '285 Patent is another variation of the abstract idea of claim 16 of the '914 Patent, discussed above, and also employs well-known concepts and conventional hardware, including "rendering data" on a DRD (data rendering device) from a server at the request of a WD (wireless device) using a "data communications network." Again, the '285 Patent does not suggest that the various hardware and network components are new. '285 Patent, 2:18-33.

### D. The Specification

The specifications supporting each of the Asserted Patents are common, with only nominal differences. Relevant portions of the specifications are discussed in more detail in Section V below.

## IV. LEGAL STANDARD

To overcome a challenge under Rule 12(b)(6), a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). Mere legal conclusions averred in a complaint are entitled to no deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Patent eligibility under 35 U.S.C. § 101 is a "threshold inquiry" where "one must focus on the [patent] claims" to determine whether any actionable claim exists. *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008) (en banc), aff'd, *Bilski v. Kappos*, 561 U.S. 593 (2010); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012). Only an "understanding of the basic character of the claimed subject matter" is required to resolve the legal issue of patent-eligible subject matter.

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). Accordingly, the Section 101 inquiry is properly raised on a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *3G Licensing, S.A. v. Blackberry Ltd.*, 302 F. Supp. 3d 640, 651 (D. Del. 2018) (granting motion to dismiss); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385 (Fed. Cir. 2018) ("The factual allegations here, taken as true, do not prevent a § 101 determination at the Rule 12(b)(6) stage.").

District courts around the country, including in this District, have routinely granted Rule 12(b)(6) motions on Section 101 grounds without engaging in formal claim construction. This practice is encouraged because "[a]ddressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad business method patents." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015) (Mayer, J., concurring).

## V.  ARGUMENT

Each of the asserted claims is directed to the abstract idea of transmitting data over a network to a display device, no different than what common appliances such as networked printers, DVD players, and televisions did for years before the Asserted Patents. Further, none of the asserted claims adds an inventive concept, rendering the claims patent-ineligible because they claim nothing more than the abstract idea itself. *See Alice*, 134 S. Ct. at 2355. Because Ortiz's allegations of direct and indirect infringement rely on patent-ineligible claims, Ortiz has failed to state a claim upon which relief may be granted and all three counts of infringement should be dismissed.

### A.     Patent Eligibility Is a Threshold Issue Appropriate for the Pleading Stage

The Court can and should grant Roku's motion to dismiss under Rule 12(b)(6) because Ortiz's Complaint relies on claims directed to patent-ineligible subject matter under 35 U.S.C. § 101 and therefore fails to state a claim upon which relief can be granted.  Patent eligibility under 35 U.S.C. § 101 is a threshold legal issue. *Bilski*, 561 U.S. at 602.  Accordingly, issues of patent eligibility are properly raised in pleadings if it is facially evident that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring).

District courts have frequently decided patent eligibility under 35 U.S.C. § 101 on motions to dismiss, and the Federal Circuit has confirmed that procedure as proper on numerous occasions. S*ee Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("Patent eligibility has in many cases been resolved on motions to dismiss or summary judgment. Nothing in this decision should be viewed as casting doubt on the propriety of those cases."); *see also Epic IP LLC v. Backblaze, INC.*, No. 1:18-141-WCB, 2018 WL 6201582, at *14 (D. Del. Nov. 26, 2018) (dismissing allegations of infringement on a Rule 12(b)(6) motion to dismiss having found that the claims were directed to patent-ineligible subject matter).

In *Berkheimer*, the Federal Circuit held that the Section 101 analysis, although a question of law, "may contain disputes over underlying facts." 881 F.3d at 1368.  However, the *Berkheimer* Court also reemphasized that it is appropriate to engage in a Section 101 analysis on a motion to dismiss when conventionality can be clearly shown.  *Id.* at 1368-70 ("Patent eligibility has in many cases been resolved on motions to dismiss or summary judgment. Nothing in this decision should be viewed as casting doubt on the propriety of those cases.").  The Court in *Berkheimer* found it proper to grant summary judgment of invalidity as to some claims because the purportedly unconventional aspects of the invention, as determined from the patent specification itself, were

not claimed, and found it improper for other claims that recited components for which there was no evidence of conventionality.  *Id*. at 1369-70.

> **B.     The Asserted Patents are Invalid as Lacking Eligible Subject Matter Under 35 U.S.C. § 101**

All of the claims of the Asserted Patents are directed to the abstract idea of transmitting data over a network to a display device. The additional elements and implementation details of the claims do little more than introduce generic methods and systems that do not transform the abstract idea into patent-eligible subject matter.  These additional elements, both alone and in combination, are routine and conventional means, including the use of well-known hardware to implement admittedly well-known concepts.

> **1.     The Claims of the Asserted Patents are Directed to the Abstract Idea of Transmitting Data Over a Network to a Display Device**

The first step of the *Alice* test asks "whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea.  134 S. Ct. at 2355.  In answering this inquiry for computer-related patents, courts ask whether the claims are directed to "an improvement in the functioning of a computer," or merely "adding conventional computer components to well-known business practices."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016).  The claims of the Asserted Patents fall into the latter category.

When examined in their entirety, it is evident that each of the claims asserted by Ortiz is directed to the abstract idea of transmitting data over a network to a display device. The Asserted Patents state as much:

> The present invention is generally related to the use and management of data retrieved over wireless networks. More particularly, the present invention is related to systems, methods and apparatus for providing video data to data rendering devices…at the request of wireless devices.

'914 Patent, 1:24-30.

This abstract idea is also evident in the claims themselves.  For example, claim 16 of the '914 Patent is directed to "using a wireless network supporting a handheld wireless device … to locate [a] video monitor," "selecting video data for rendering on said video monitor," "providing said video data to said video monitor. . . ."  *See* '914 Patent, claim 16.  Claim 1 of the '299 Patent and claim 1 of the '285 Patent are variations of the same abstract idea. For example, claim 1 of the '299 Patent is directed to "receiving a request in a wireless data communication network from a wireless device (WD) to locate at least one data rendering device (DRD)," "providing said WD with location information of at least one accessible DRD," "receiving from said WD via said wireless data communication network a selection of a DRD," and "caus[ing] said DRD to retrieve and render the video data."  Similarly, claim 1 of the '285 Patent is directed to "a server in communication with at least one data rendering device" and "memory in said server accessible by said data rendering device," wherein the server is "configured to receive said data and said passcode associated with said WD from said memory and to render said data. . . ."

The abstract idea of transmitting data over a network to a display device has been broadly implemented across a variety of industries long before the priority date claimed by the Asserted Patents.[3]  Each of the Asserted Patents admits this by stating that "presentation projectors typically used in conference room scenarios are already generally capable of being connected to laptops for the purpose of displaying electronic information." '914 Patent, 10:28-31.  Here, Ortiz signals the abstract nature of its purported inventions.  In essence, the broad concepts to which the asserted claims are directed are no different than connecting a laptop in a conference room or docking station and selecting the desired monitor or projector screen.  Viewed another way, the same steps are performed by an individual that uses a laptop (a wireless device) to select a printer (a data

---

[3] The Asserted Patent contain on their face a claimed priority date of June 27, 2000.

rendering device) for printing a document.[4]  The fact that Ortiz's claims do this with a "wireless" device and/or wireless communication network makes no difference because the purported invention is *not* new wireless networking techniques, but rather "the use and management of video data retrieved over wireless networks."  '914 Patent, 1:24-25.

The Federal Circuit has long held that the concept of transmitting data over a network to a display device, as claimed in the Asserted Patents, is a patent-ineligible abstract idea.  For example, in *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, the Federal Circuit affirmed that "delivering user-selected media content to portable devices is a [patent ineligible] abstract idea." 838 F.3d 1266, 1269 (Fed. Cir. 2016); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 609 (Fed. Cir. 2016) (affirming that a telephone is merely a conduit for the abstract idea of "taking, transmitting, and organizing digital images"); *see also DIRECTV*, 838 F.3d at 1262, cert. denied sub nom. *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 137 S. Ct. 1596 (2017) (stating that using generic cellular telephones and a graphical user interface to transmit and receive regional broadcast signals out-of-region, was directed to a patent-ineligible abstract idea).

In *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, the Federal Circuit addressed a patent claiming "a network-based media system with a customized user interface, in which the system delivers streaming content from a network-based resource upon demand to a handheld wireless electronic device," and found that the claims were invalid for being directed to the abstract idea of "delivering selectable media content and subsequently playing the selected content on a portable device." *Affinity Labs*, 838 F.3d at 1268.  Similarly, the claims of the Asserted Patents[5] are directed

---

[4] "Printers" are among the exemplary data rendering devices discussed in the Asserted Patents. '914 Patent, 6:43-45.

[5] All of the asserted claims involve using a wireless network, and a wireless device to either render or broker user-selected video data to a data rendering device. *See, e.g.*, '299 Patent, Claim 1.  The only limitation not explicitly addressed in *Affinity Labs of Texas, LLC v. Amazon.com Inc.* is the

to sending video data via a wireless data communication network to a data rendering device (defined in the specification as a network based resource)[6] using a wireless computing device (e.g., a wireless electronic device).[7] The claims of the Asserted Patents invoke the same concepts that the Federal Circuit has already determined to be abstract and patent-ineligible. *Id.*

Furthermore, the asserted claims are patent-ineligible because they fail to improve the underlying technological field.  The Federal Circuit has been clear that a claim is patent-ineligible if it discloses nothing more than "the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two."  *TLI*, 823 F.3d at 612; *see also VideoShare, LLC v. Google, Inc.*, No. 13-cv-990 (GMS), 2016 WL 4137524, at *6 (D. Del. Aug. 2, 2016), aff'd, 695 Fed. Appx. 577 (Fed. Cir. 2017) (stating that using a network to stream and share a video was abstract for lacking an improvement in computer functionality, and attempting to claim a generic environment for carrying out the abstract idea).

In *TLI*, the Federal Circuit noted that the inventor did not face the problems of combining a camera and a cellular telephone, transmitting images via a cellular network, or associating the images with classification information. *Id* at 611.  Rather, "the inventor sought to provid[e] for recording, administration and archiving of digital images simply, fast and in such way that the information therefore may be easily tracked." *Id*. at 612 (internal citations omitted). The Court

---

highly conventional use of a passcode to secure access to the data, which is addressed under the second prong of the *Alice* inquiry.

[6] "Data Rendering Devices" are defined as televisions, printers, video monitors, printers, and projectors among other devices that are infrared, radio frequency, or network communication enabled. *See, e.g.*, '914 Patent, 1:29-30; *see also* '914 Patent, 8:29-33.

[7] "Wireless Computing Devices" are defined as "mobile or cellular phones, smart phones and laptops" that "communicate wirelessly through data networks (including cellular digital wireless networks). *See, e.g.,* '914 Patent, 2:4-8.

found that both the telephone and server were simple conduits for the abstract idea, and offered no technical improvement to the existing technology. *Id.* at 614.

Ortiz likewise fails to sufficiently disclose a specific technical solution to a specific technical problem.  Instead of contending that the invention provides improvements to wireless devices, data rendering devices, or network architectures, the specification describes the supposed "problem" as the idea itself: "the present invention is related to systems, methods and apparatus for providing video data to data rendering devices…at the request of wireless devices."  '914 Patent, 1:24-30.  Although the specification does lip service to this requirement by mentioning the need for "new and improved systems, methods and apparatuses for rendering data retrieved through/with wireless devices," the asserted claims only recite the abstract idea at a high level of generality and fail to include anything "new" or "improved."  '914 Patent, 4:26-31.  Even though the specification asserts that "[i]t is therefore an object of the present (WDs) invention to provide methods, systems and apparatus for **<u>data brokering</u>** between wireless devices and Data Rendering Devices (DRDs)," the claims merely recite the use of a wireless computing device to send data to another device rather than any specific brokering algorithms or techniques.  *See* '914 Patent, 4:35-38 (emphasis added).  Unlike the claims in *Enfish* and other claims that have been saved from invalidity under the first step of *Alice*, there is nothing in Ortiz's claims that tie them to any specifically described improvements to the computer in the specification.  *See VideoShare,*, 2016 WL 4137524, at *6 (discrediting a disclosure of existing technologies unattributed to, but used by, the patentee, and reiterating that the prohibition against patenting abstract ideas cannot be circumvented by limiting its application to a particular technological environment).

Numerous district courts have found similar claims patent-ineligible in analogous scenarios. *See, e.g., Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, 76 F. Supp.

3d 513, 524 (D. Del. 2014), aff'd, 803 F.3d 667 (Fed. Cir. 2015) (holding that patents claiming well-known banking practices are patent-ineligible in spite of the inclusion of a wireless device and network); *see also Mobile Telecommunications Techs., LLC v. Blackberry Corp.*, No. 3:12-cv-1652-M, 2016 WL 2757371, at *5 (N.D. Tex. May 12, 2016) (holding that even though the patentee was truly the first to successfully implement the concepts of the asserted claims within a wireless context, that fact did not transform the abstract ideas into something patentable); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 316 F. Supp. 3d 1138, 1150 (N.D. Cal. 2018) (holding that claims directed to a combination of abstract ideas, including collecting and transferring information between devices via a Bluetooth or other wireless connection, did not constitute anything more than a patent-ineligible abstract idea).

For at least the foregoing reasons, all of the claims of the Asserted Patents are directed to the abstract idea of transmitting data over a network to a display device.

> **2.     The Claims of the Asserted Patents Lack an "Inventive Concept" Capable of Transforming the Abstract Idea into Patent-Eligible Subject Matter**

Once an abstract idea is identified, the second step of the *Alice* test requires an evaluation of whether the claims sufficiently recite "an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S. Ct. at 2355. "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326-27 (Fed. Cir. 2017) (citing *Alice*, 134 S. Ct at 2355).

Here, the claims of the Asserted Patents do not recite an inventive concept but merely "apply it" (i.e., the abstract idea) using generic computing hardware performing conventional processes. *See Alice*, 134 S. Ct. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). The additional elements recited in the asserted claims are

limited to "servers", "data rendering devices" such as televisions, video monitors, and projectors (*see, e.g.*, '914 Patent, 1:29-30), and "wireless computing devices" such as "mobile or cellular phones, smart phones and laptops" that "communicate wirelessly through data networks (including cellular digital wireless networks)." *See, e.g.,* '914 Patent, 2:4-8 (emphasis added). It is well established that such hardware is conventional for the purposes of the second inquiry of *Alice*. *See e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016) (conventional computer and network technology, without further limitations, were not sufficient to establish an inventive concept); *see also Affinity Labs v. Amazon.com*, 838 F.3d at 1271, cert. denied, 137 S. Ct. 1596, 197 L. Ed. 2d 708 (2017) (generic network streaming and the provision of a user interface did not constitute an inventive step capable of transforming the abstract idea of delivering media content); *see also Joao Bock*, 76 F. Supp. 3d at 524 (D. Del. 2014), aff'd, 803 F.3d 667 (Fed. Cir. 2015) (finding that "restriction to wireless devices does not purposefully limit the claims").

Collectively, all of the asserted claims recite high-level, conventional steps such as: (1) "using a wireless network"; (2) "selecting video data"; and (3) "providing said video data." It is well established that simply using a wireless network to transmit data does not qualify as an improvement sufficient to constitute a transformative inventive concept. *See Hulu*, 772 F.3d at 716–17 (clarifying that "the Internet is not sufficient to save the patent under the machine prong of the machine-or-transformation test. It is a ubiquitous information-transmitting medium, not a novel machine.") (citations omitted); s*ee also Front Row Techs., LLC v. NBA Media Ventures, LLC*, 204 F. Supp. 3d 1190, 1274 (D.N.M. 2016), aff'd sub nom. *Front Row Techs. LLC v. MLB Advanced Media, L.P.*, 697 Fed. Appx. 701 (Fed. Cir. 2017), cert. denied, 138 S. Ct. 1597 (2018). (holding that simply using a wireless network to send video data did not contain an inventive concept that transformed nature of claims into a patent-eligible application); *see also Mobile*

*Telecommunications Techs., LLC v. United Parcel Serv., Inc.*, 173 F. Supp. 3d 1324, 1334 (N.D. Ga. 2016), aff'd, 708 Fed. Appx. 684 (Fed. Cir. 2018) (stating "it is hard to understand how a 'wireless page message'—like a 'SMS message or email message'—sent over a 'connectionless framework'—like a cellular network or the internet—is anything but generic").

Furthermore, the use of an "authorization code" and "passcode," as recited in both claim 1 of the '299 Patent and claim 1 of the '285 Patent, does not qualify as an inventive concept. The conventionality of limiting access to data can hardly be disputed, as it is ubiquitous across the computing industry. *See Money Suite Co. v. 21st Century Ins. & Fin. Servs., Inc.*, No. 13-984-GMS, 2015 WL 436160, at *4 (D. Del. Jan. 27, 2015) (holding that password protection did not qualify as an inventive concept, where the patentee did not contend that it invented it); *see also Uniloc USA, Inc. v. Amazon.com, Inc.*, 243 F. Supp. 3d 797, 807 (E.D. Tex. 2017), aff'd, 733 Fed. Appx. 1026 (Fed. Cir. 2018) (finding that using authorization requests to verify a device and use a digital product from that device did not amount to an inventive concept); *Hulu*, 772 F. 3d at 716 ("Adding routine additional steps such as … requiring a request from the consumer to view the ad [and] restrictions on public access … does not transform an otherwise abstract idea into patent-eligible subject matter"); *id.* ("Further, that the system is active, rather than passive, and restricts public access also represents only insignificant '[pre]-solution activity,' which is also not sufficient to transform an otherwise patent-ineligible abstract idea into patent-eligible subject matter").

Finally, claim 1 of the '299 Patent further claims the use of a wireless network to "identify a physical location, operational readiness and rendering capabilities" of a data rendering device. Sending a request for a physical location of a device and assessing that device's status have both been determined to be insufficient to transform an otherwise abstract idea into patent-eligible subject matter. *See Location Based Servs., LLC v. Niantic, Inc.*, 295 F. Supp. 3d 1031, 1058 (N.D.

Cal. 2017), aff'd, 742 Fed. Appx. 506 (Fed. Cir. 2018) (stating that a claim limitation of transmitting a request for a specific location did not disclose an inventive concept, even when coupled with a limitation of determining a status associated with at least one of the locations on the map). Again, this is no different than logging onto a networked computer and seeing a number of printers or other terminals available on the network. A networked printer or terminal may have rendering capabilities (e.g., black and white or color ink, resolution, etc.) and a physical location (e.g., conference room, second floor, etc.).

The specifications admit that Ortiz did not invent wireless computing devices, wireless networks, data rendering devices, or the idea of sending data from one device to another to be displayed. For example, the specification states that "[w]ireless computing devices … are available that communicate wirelessly through data networks (including cellular digital wireless networks)." *See e.g.*, '914 Patent, 2:4-7. The specifications further concede that "[w]ireless location based services deployed on wireless networks enable wireless service providers to utilize information regarding the geographic location of wireless devices…" *See e.g.*, '914 Patent, 3:20-25. Finally, the specifications acknowledge that: "[s]ecurity of data during its transmission over wireless devices has become a growing concern. Improved encryption and user verification technologies enhance fraud prevention with respect to data transmission over networks." *See e.g.*, '914 Patent, 3:60-63. Given the detailed descriptions of technologies and processes known in the field, in addition to the asserted claims' high-level recitation of conventional steps, it is unclear what Ortiz actually purports to have invented. To the extent there is an invention here, it certainly does not appear in any of the asserted claims.

The second step of *Alice* further requires consideration of whether the "ordered combination" of limitations amounts to an inventive concept. *Alice*, 134 S. Ct. at 2355. As

discussed above, each step of the asserted claims is individually directed to conventional and routine computer tasks.  In this case, performing all of the steps in the claimed order creates nothing significant beyond the routine transmission of user-selected data that has existed long before the patentee filed the Asserted Patents.  At most, the claims recite "the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two." *See TLI*, 823 F.3d at 612. Thus, the ordered combination of steps "ad[d] nothing ... that is not already present when the steps are considered separately."  *Alice*, 134 S. Ct. at 2359 (quoting *Mayo*, 132 S. Ct. at 1298).

For at least the foregoing reasons, the asserted claims of the Asserted Patents fail to claim an inventive concept sufficient to transform the abstract idea of using a network to transmit data to a data rendering device into patent-eligible subject matter.

## VI.     CONCLUSION

The Asserted Patents fail both prongs of the *Alice* test.  Each of the asserted claims is directed to the abstract idea of transmitting data over a network to a display device, and the asserted claims recite nothing more than generic computing equipment used in conventional ways to apply the abstract idea.  None of the asserted claims adds an inventive concept sufficient to make the abstract idea patent-eligible, Ortiz has failed to state a claim upon which relief can be granted, and the Complaint should be dismissed with prejudice.

ASHBY & GEDDES

*/s/ Steven J. Balick*

_____

Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Of Counsel:*

Kent E. Baldauf, Jr.
Bryan P. Clark
THE WEBB LAW FIRM
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA  15222
(412) 471-8815

*Attorneys for Defendant*

Dated:  December 26, 2018